## CANAL APPRAISERS AND CANAL COMMIS-SIONERS.

THE CANAL APPRAISERS *v.* THE PEOPLE *ex rel.* TIB-BETS, 17 Wend. 571.

Error from S. Ct. 13 Wend. 355 to 373. Decided Dec. 1836, in Ct. of Err.

JANUARY, 1835, In Supreme Court. The Supreme Court held, that 1. "The proprietors of *islands*, separated by a stream in which the tide does not ebb and flow, own respectively to the centre of the stream unless the language of the *grants under which the islands are held, is such as clearly and unequivocally to show that the intent of the parties was that the* grant should not extend beyond the *water's edge.* 2. When the stream is navigable for either boats or rafts, the *public* have a right to use it for those purposes and

the rights of the adjoining proprietors are subject to the public easement; but the *state* can not divert the water of the stream, or interfere with it in any other manner, which will render it less useful to the proprietors of the adjacent shores.

" If in the improvement of a *navigable river by the state* by the erection of a dam, a *waterfall* in a tributary stream not *navigable*, belonging to an *individual*, is overflowed and *destroyed*, such individual, both within the meaning and spirit of the *constitution* and the *canal laws*, is entitled to compensation for the injury sustained, equally as if his property had been taken for the public use.

" Grants by the Legislature of *islands, in rivers and streams, where the tide does not ebb and flow*, although made during a long series of years, will not justify the conclusion *that the principle of the common law has not been adopted* here ; that grants of land bounded on rivers and streams where the tide does not ebb or flow, carry the exclusive rights to the middle of the stream ; or having been adopted, that it has ever been abrogated or exploded."

This was an application for a mandamus to the canal appraisers, to compel them to allow the relator damages for the destruction of a waterfall belonging to him, situated in the *middle* sprout of the Mohawk river, near the *junction* of the Erie and Champlain canals, by the erection of a dam across the *Hudson* river at the sloop lock, between Troy and Lansingburg. A peremptory mandamus having been issued, the appraisers sued out a writ of errors and the Court of Errors *reversed* the judgment of the Supreme Court, on the ground that the relator had not shown title in himself to the *locus in quo ;* but leave was given him to *traverse* the return, so as to give him an opportunity to prove his title.

See 5 Wend. 423 to 474, in Court of Errors.

There seems to have been some question, partly of law and of fact, as to the actual location of the grant under which the relator claimed, which involved no important principle.

The Supreme Court holding that the relator was entitled

to the south half of the *middle sprout*, the appraisers brought this writ of error.

In the course of the trial before the circuit judge, the acts of the legislature, (incorporated into the return, as it would appear,) granting a large number of islands, &c., were introduced in evidence, to show what the *law of the state was*, and that the legislature as evidenced by these private acts, had rejected or abrogated the common law rule with regard to riparian owners, &c. The Chancellor in his opinion, very justly, though severely, characterizes this mode of establishing the law of the land. He says—p. 602:

" These acts of recent legislation are very little to be relied on to prove what our common law was one hundred and fifty years ago. Indeed the whole of these legislative acts and supposed conflicting grants, which were introduced into the return of the defendants below, merely by way of argument, or for the purpose of informing *the Supreme Court what the law was*, were improper as *evidence* for the consideration of the jury, as in civil cases the jury are to decide matters of fact merely, and the court is the proper tribunal to settle the law."—" Indeed it would present a new and striking instance of the glorious uncertainty of the law, if the legal construction of all our titles to real estate was to be settled by the verdict of a jury, and upon such *evidence of the law* as has been produced by both parties in this case."

☞ As well for this reason, as others assigned by the Chancellor, he was for affirming the judgment of the Supreme Court. But *aliter Dis visum;* and the judgment of the Supreme Court was reversed.

The Senators who delivered opinions in favor of *reversal* were Beardsley and Tracy; and it is to be sincerely regretted, for the credit of our jurisprudence, that their unsatisfactory reasoning or apparent exercise of legislative power, to *enact* the law, should have prevailed over the sound reasoning and clear legal principles of the Chancellor's opinion.

☞ The marginal note of the reporter in this case is as follows :

" If in the *improvement of the navigation* of a public river, the waters of a tributary stream are so much raised as to destroy a valuable mill site situate thereon, and the stream be *generally navigable,* although not so at the particular locality of the mill site; the owner is not entitled to damages within the provisions of the *canal laws* directing compensation to be made for private property taken for public use."

☞ See case of the *Commissioners of Canal Fund* v. *Kempshall,* where compensation was allowed for obstructing a race course in the Genesee river, at Rochester, and on writ of error to the Supreme Court, *affirmed* by the Court of Errors, 26 Wend. 404; also, *Child* v. *Starr* and others, 4 Hill 369.   S. C. in S. Ct. 20 Wend. 149.